NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CARYN MUCCINO,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 11-3641 (JAP)** |
| **LONG TERM DISABILITY INCOME PLAN FOR CHOICES ELIGIBLE EMPLOYEES OF JOHNSON & JOHNSON, et al.,** | **OPINION & ORDER** |
| **Defendants.** | |

This matter has been opened to the Court upon Motion [Docket Entry No. 15] by Plaintiff Caryn Muccino ("Plaintiff") seeking an Order compelling discovery from Defendant Long Term Disability Income Plan for Choices Eligible Employees of Johnson & Johnson, et al. ("Defendants"). Defendants oppose Plaintiff's motion. The Court has fully reviewed the submissions of the parties and considers same without oral argument pursuant to FED. R. CIV. P. 78. For the foregoing reasons, Plaintiff's Motion to Compel is DENIED without prejudice.

## I. Background and Procedural History

The underlying case relates to Plaintiff's appeal of a Long Term Disability ("LTD") eligibility determination. Plaintiff, an employee of Johnson & Johnson ("J & J"), began Short Term Disability leave in August, 1999. At the conclusion of her Short Term Disability leave, Plaintiff applied for, and was granted, LTD benefits as of February, 2000. Plaintiff continued to receive LTD benefits for ten years. In accordance with the terms of the J&J disability plan (the

"Plan"), Plaintiff's claim was periodically reviewed by Reed Group ("Reed"), the Plan administrator. Following a record review, a Functional Capacity Evaluation ("FCE") and an Independent Medical Examination ("IME") in January, 2010, Plaintiff's benefits were terminated in March of that year. The FCE and IME were performed by Charles Filippone, P.T., O.C.S., C.A.E., and Dr. Rajt Dhar, M.D., F.A.C.R., respectively. Both Mr. Filippone and Dr. Dhar were hired by Reed to assist in claim determinations. In April, 2010, Plaintiff filed a first-level appeal of that claims decision. The appeal was denied. Plaintiff then filed a second-level appeal and she requested an additional medical record review which was performed by Kevin L. Trangle, M.D., MBA, FACOEM, FACPM, FAADEP, CIME, CMRO. Dr. Trangle, too, determined that Plaintiff was capable of working in a sedentary occupation for eight hours per day and, by correspondence to Plaintiff dated December 9, 2010, the decision to terminate benefits was upheld. Plaintiff then brought this action in federal court on June 23, 2011 [Docket Entry No. 1] alleging, among other claims, violation of the Employee Retirement Income Security Act of 1974 ("ERISA").

Plaintiff states that, during the Rule 16 Conference, the parties agreed that Plaintiff would serve discovery on Defendants. On October 28, 2011 and October 31, 2011, respectively, Plaintiff served her first set of Interrogatories and Notice to Produce. *Exhibits A, C to Plaintiff's Brief in Support of Motion*, Docket Entry Nos. 15-3, 15-5. Defendants served responses and numerous objections on December 15, 2011. Defendants' responses revealed that a third party review firm, Claim Appeal Fiduciary Services ("CAFS") reviewed Plaintiff's final appeal and that a J & J occupational health nurse, Valerie Pax, had also performed a review and made recommendations regarding Plaintiff's claim. Neither Nurse Pax's name nor the name "CAFS"

appears in the administrative record.  Plaintiff then requested more information from Defendants, to which Defendants again objected.  The parties "met and conferred" on January 12, 2012 in an attempt to resolve these discovery issues without court intervention; however, their efforts were unsuccessful.  Plaintiff then, with the permission of the Court, filed this motion seeking to compel discovery from Defendants.

### A. Plaintiff's Position

Plaintiff contends that Defendants have failed to provide relevant information to Plaintiff despite their obligation to do so under ERISA.  Plaintiff asserts that the discovery she requests should be produced for three reasons.  First, Plaintiff contends that discovery may be had into procedural irregularities, which she claims exist here.  Second, Plaintiff asserts that Defendants' objections were inappropriate boilerplate objections.  Third, Plaintiff contends that a structural conflict of interest exists within the Plan itself which allows Plaintiff to conduct discovery into the extent of the conflict.

### 1.  Procedural Irregularities

Plaintiff argues that discovery may be had into procedural irregularities.  *Miller v. Am. Airlines, Inc.,* 632 F.3d 837 (3d Cir. 2011).  Plaintiff asserts that the Court may consider evidence beyond the administrative record such as trustee bias or a pattern of inconsistent benefits decisions in ERISA. *Otto v. W.Pa Teamsters & Employers Pension Fund*, 127 Fed. Appx. 17, 21 n.7 (3d Cir. 2005); *Howley v. Mellon Fin. Corp.*, 625 F.3d 799, 793-94 (3d Cir. 2010) (citing *Burke v. Pitney Bowes, Inc. Long-Term Disability Plan*, 544 F.3d 1016, 1028 (9th Cir. 2008)).  Plaintiff contends that "[h]ere, there are a host of procedural irregularities pointing to bias in the

decision-making" and Plaintiff argues that she "must be permitted to substantiate these procedural irregularities through discovery." *Plaintiff's Brief in Support of Motion*, Docket Entry No. 15-1, *13; *see also Delso v. Trustee of Retirement Plan for Hourly Employees of Merck, Inc.*, 2006 WL 3000199 at *3 (D.N.J. Oct. 20, 2006).  Specifically, Plaintiff contends that four procedural irregularities exist: (1) Defendant's concealment of the identifies of the reviewers and fiduciaries; (2)  the secret review conducted by Nurse Pax; (3) the incompleteness of the administrative record; and (4) J & J's unjustified reliance on the opinion of Mr. Filippo.  Each will be addressed in turn.

        As to the first alleged procedural irregularity, Defendants' alleged concealment of the identities of the reviewers and fiduciaries, Plaintiff contends that the final denial letter of Plaintiff's LTD claim was ghostwritten by an anonymous person(s) at a third party review firm, CAFS.[1]  Plaintiff argues that Defendants have not provided the name or credentials of the person who ultimately made the decision to deny benefits.  In addition, Plaintiff asserts that the materials given to the decision-maker for review or the methods by which this person(s) came to his determination of denial have not been revealed.  Plaintiff states that ERISA regulations require a full and fair review, which requires that the administrator identify the medical experts whose advice it obtained, without regard to whether the advice was relied upon in making the benefit determination, 29 C.F.R. §2560.503-1(h)(3)(iv), and that the Plan afford review by "the

---

        [1]Plaintiff further questions Defendants' allegedly "inadvertent" failure to include the CAFS report in the administrative record.  As the identity of CAFS and the report were openly revealed and discussed in Defendants' Interrogatory responses and during the January 12, 2012 "meet and confer," Defendants' initial failure to include this report in the administrative record is moot.

appropriate *named* fiduciary." 29 U.S.C. §1133 (emphasis added). Thus, Plaintiff concludes that Defendants' allegedly intentional denial of this information is a violation of ERISA's promise of a full and fair review of claims. Plaintiff cites to a number of cases from other jurisdictions in support of her proposition that she is entitled to discovery concerning the identification and qualifications of experts and/or reviewers. *See Plaintiff's Brief* at *16-18.

As to the second alleged procedural irregularity, Plaintiff argues that the medical review conducted by Nurse Pax was done in secrecy. Plaintiff expresses concern that Nurse Pax did not sign the review, nor does her name appear on the paperwork. Plaintiff again asserts that ERISA requires the identification of experts consulted. 29 C.F.R. §2560-503-1(h)(3)(iv). Plaintiff argues that the administrative record contains no information regarding what information Nurse Pax reviewed or who, if anyone, read her review. Plaintiff also suggests that Nurse Pax's recommendation was based on CAFS's investigation and, thus, was not truly an independent review. Plaintiff would like discovery into the "contents" of Nurse Pax's review. *Plaintiff's Brief* at *22.

As to the third alleged procedural irregularity, Plaintiff alleges that the administrative record is incomplete. Plaintiff states that her repeated discovery requests have been refused and she argues that a claimant must have an opportunity to contest whether the administrative record is complete. *Crosby v. Louisianna Health Service & Indem. Co.,* 647 F.3d 258, 263-64 (5th Cir. 2011); *Estate of Bratton v. Nat'l Union Fire Ins. Co.*, 215 F.3d 516, 521 (5th Cir. 2000); *Glennon v. Prudential Ins. Co. of Am.,* 2009 WL 4405755 (N.D. Ga. Dec. 2, 2009). Plaintiff further asserts that Defendants have ignored that ERISA requires that the administrative record include anything submitted, considered or generated without regard to whether the administrator

5

believes it relied upon the information.  29 C.F.R. §2560-503-1(m)(8).  Plaintiff states that Defendants have unilaterally decided what information to put into the record. *Plaintiff's Brief* at *22, 24.  She provides a list of items which she seeks "into the completeness of the administrative record[.]" *Id.* at *26.

As to the fourth procedural irregularity, Plaintiff seeks discovery into the relationship between the Reed Group, J & J and Mr. Filippone, who it consistently hires to perform FCE's. Plaintiff states that Defendants refused to provide evidence regarding the extent of Mr. Filippone's evaluation regarding Plaintiff's functionality.  Specifically, Plaintiff contends that Mr. Filippone's evaluation was based on only four minutes of video taped testing and not the lengthy testing he alleges occurred. *Plaintiff's Brief* at *27.  Plaintiff contends that Mr. Filippone also justified his opinions based on the "google mapped" distance between his office and Plaintiff's home. *Id.*  Plaintiff asserts that Mr. Filippone has been discredited and she seeks discovery to explore procedural bias and irregularities.  Plaintiff cites a number of cases from other jurisdictions in support of this proposition. *Id.*  Plaintiff also suggests that J&J's use of Dr. Rajat Dhar and his history of working with Mr. Filippone lends toward the existence of procedural bias.  Plaintiff asserts that her suspicions regarding these medical examiners are "well grounded" and she seeks discovery into J & J and Reed Group's relationship with its third party vendors and consultants. *Id.* at *28.

## 2. Defendants' Alleged Boilerplate Objections

Second, Plaintiff contends that Defendant's boilerplate objections to Plaintiff's discovery are inappropriate because "Defendants present no evidence and offer no justification for their

6

blanket objections." *Plaintiff's Brief* at *29.  Plaintiff cites to Fed. R. Civ. P. 26(g) and to this Court's ruling in *NE Tech, Inc. v. Evolving Sys.,* 2008 WL 4277668 (D.N.J. Sept. 12, 2008) in support of her argument that Defendants' statements be stricken from the record and that Defendants be compelled to provide the discovery requested by Plaintiff.

### 3.  Structural Conflict of Interest

As its third and final argument, Plaintiff asserts that "the structural conflict of interest inherent in being the payor of ancillary benefits and the decision maker infected Defendants' review of the claim." *Plaintiff's Brief* at *31.  Plaintiff relies, in part, on *Miller v. American Airlines, Inc.,* 632 F.3d 837 (3d Cir. 2011) in support of her argument that a structural conflict, in fact, exists under the circumstances presented in this case.  Plaintiff explains that "[a]lthough the [Plan] is funded by participant contributions, the Plan is administered by the same Committee that administers other employee benefits that *are* funded by J & J." *Plaintiff's Brief* at *33. Plaintiff concludes that "the Committee has a strong financial interest to deny or terminate disability benefits, in order to reduce J & J's expenditures for other benefits." *Id.*  Plaintiff contends that, because a structural conflict of interest exists here, Plaintiff is entitled to discovery into the extent of the conflict.  *Luby v. Teamsters*, 944 F.2d 1176 (3d Cir. 1991).

### B.  Defendant's Arguments

Defendants assert that they have complied with applicable law and that Plaintiff has not establish any valid reason which entitle her to the discovery she seeks.  First, Defendants assert that in a case such as this, which is governed by ERISA, an arbitrary and capricious standard of review applies and discovery is limited to the administrative record.  Defendants contend that

they have provided this information to Plaintiff and that Plaintiff has not provided a basis for compelling production of the additional discovery she seeks.  Second, Defendants state that there is no conflict of interest in the organizational structure of the Plan which warrants discovery beyond the administrative record.  Third, Defendants argue that Plaintiff has not set forth any evidence of procedural irregularities which would entitle Plaintiff to additional discovery. Lastly, Defendants contend that their objections to Plaintiff's discovery requests were valid and, as such, should not be stricken from the record.

### 1.  Administrative Record and Standard of Review

Defendants assert that the applicable standard of review in a case such as this is arbitrary and capricious. *Defendants' Memorandum of Law in Opposition to Plaintiff's Motion*, Docket Entry No. 19, *11.  In addition, Defendants contend that, in this district, a court's review of a claim for benefits under the arbitrary and capricious standard of review is "limited to that evidence that was before the administrator when it made the decision being reviewed." *Mitchell v. Eastman Kodak, Co.,* 113 F.3d 433, 440 (3d Cir. 1997); *see also Abnathya v. Hoffmann-La Roche, Inc.,* 2 F.3d 40, 48 n.8 (3d Cir. 1993); *Johnson v. UMWA Health & Retirement Funds,* 125 Fed. Appx. 400, 405 (3d Cir. 2005); *O'Sullivan v. Metropolitan Life Insurance Co.,* 114 F.Supp. 2d 303, 309 (D.N.J. 2000); *Weiss v. First Unum Life Ins. Co.,* Civil No. 02-4249, 2008 WL 5188857, at *10-11 (D.N.J. December 10, 2008).  Thus, Defendants conclude that the Court's review of ERISA benefit denials under the arbitrary and capricious standard of review is limited to the administrative record.

Defendants state that Plaintiff's allegation that the claim determination was made in a

"cloak of secrecy" is unfounded and Defendants certify that they provided Plaintiff with the complete administrative record.  Defendants explain the events which led to the ultimate decision to uphold the denial of benefits.  Defendants assert that "Plaintiff seeks to expand discovery beyond the administrative record by attempting to redefine what should be considered to be part of the administrative record."*Defendants' Opposition* at *13.

Defendants further assert that the contents of the administrative record is mandated by ERISA regulations. 29 C.F.R. § 2560.503-1(m)(8).  Defendants contend that the administrative record in this case contains all relevant information required by the ERISA regulations and Defendants certify that any and all information and documentation that was "submitted, considered or generated in the course of making the claim determination," was produced during the administrative review process when requested in compliance with 29 C.F.R. § 2560.503-1(m)(8)(ii).  Defendants contend that Plaintiff has not identified any information or documentation within the scope of the administrative record as defined under ERISA which Defendants have not produced. *Defendants' Opposition* at *14.

 Defendants assert that Plaintiff's requests are broad, vague and that Plaintiff has failed to provide any justification why the discovery she seeks should have been included in the administrative record under the governing ERISA regulations.  Finally, Defendants point out that Plaintiff has cited to cases outside of this jurisdiction in support of her contention that she is entitled to discovery regarding the completeness of the administrative record. *Defendant's Opposition* at *15-16.

## 2.  Structural Conflict of Interest

9

In response to Plaintiff's argument that she is entitled to discovery beyond the administrative record because Defendants were operating under a structural conflict of interest when they denied benefits to Plaintiff, Defendants assert that no such conflict existed.   Plaintiff admits that the J & J Plan at issue was fully funded by participating employee contributions; however, Plaintiff argues that she is entitled to discovery because the J & J Plan is administered by the same Pension Committee that administers other employee benefits which are funded by J&J.   In addition, Plaintiff has argued that funding of a plan in an indirect way can still create a conflict of interest.   Defendants contend that Plaintiff's arguments are unfounded and Defendants cite a number of cases in support of their position that there is no structural conflict of interest in the organization of the Plan.   *See Miller v. American Airlines, Inc.*, 632 F.3d 847 (3d Cir. 2011) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)); *see also Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 383 (3d Cir. 2000), *modified on other grounds by Estate of Schwing v. The Lilly Health Plan*, 562 F.3d 522, 525 (3d Cir. 2009); *see also Post v. Hartford Ins. Co.*, 501 F.3d 154, 164 (3d Cir. 2007).

Defendants point out that this District has addressed whether there were any structural conflicts of interest with respect to the specific J & J Plan at issue here; both times finding that there were not.   *See Zurawel v. Long Term Disability Income Plan For Choices Eligible Employees of Johnson and Johnson*, Civil Action No. 07-5973, 2010 WL 3862543 (D.N.J. Sept. 27, 2010)*; Dunn v. Reed Group, Inc.*, Civil Action No. 08-1632, 2009 WL 2848662 (D.N.J. Sept. 2, 2009).   Defendants explain that there is no legal support for Plaintiff's arguments for a structural conflict of interest because there is no financial incentive for the decision-makers to

terminate benefits because they are not responsible for funding the LTD Plan. *Defendants'*
*Opposition* at *19, 20.

### 3. Procedural Irregularities

Defendants further argue that Plaintiff's motion to compel discovery based on the
existence of procedural irregularities should be denied for two reasons.  First, Defendants assert
that "the alleged existence of procedural abnormalities does not provide the basis to expand
discovery beyond the administrative record[.]" *Defendants' Opposition* at *21.  Defendants argue
that, contrary to Plaintiff's argument, case law in this jurisdiction dictates that "procedural
abnormalities are determined by review of the administrative record, and are not a basis for
discovery beyond the administrative record." *Id.* at *21; *Zurawel v. Johnson & Johnson,* Civil
No. 07-5973, Docket Entry No. 25; *see also Id.*, Docket Entry No. 16.

Second, Defendants argue that "Plaintiff has failed to present a good faith basis for
alleging that procedural irregularities infected the administrator's determination with regard to
the LTD Plan" in this case. *Defendants' Opposition* at *21.  Defendants discuss the types of
procedural abnormalities which may raise suspicion as to a plan administrator's decision-making
and Defendants assert that these abnormalities are determined by a review of the administrative
record. *Tylwalk v. Prudential*, 257 Fed.Appx. 568, 571 (3d Cir. 2007) (citing *Post,* 501 F.3d at
165 (holding that procedural irregularities may arise where claims determination reflects: reversal
of position without additional medical evidence; self-serving selectivity in the use and
interpretation of physician's reports; disregard of staff recommendations that benefits be
awarded; and request for a medical examination when all evidence indicates disability)); *see also*

*Zurawel v. Johnson & Johnson,* Civil No. 07-5973, Docket Entry No. 25; *see also Id.*, Docket

Entry No. 16.  Defendants distinguish the case at hand from those relied on by Plaintiff.

*Defendants' Opposition* at *22-23.  Defendants assert that "the administrative record clearly

demonstrates that Defendants' decision to terminate Plaintiff's LTD benefits was the product of

reasoned decision-making and substantial evidence." *Id.* at *23.  Defendants further allege that

Plaintiff has failed to set forth evidence of procedural irregularities or an overall scheme by

Defendants to act disingenuously or any basis which would entitle her to discovery beyond the

administrative record. *Id.*

With respect to the identities of reviewers and fiduciaries, Defendants contend that

Plaintiff's arguments are unfounded and overly vague such that Defendants are unsure about

what specific information Plaintiff is seeking or why Plaintiff thinks she is entitled to it. *Id.* at

*24.  Defendants certify that they have been forthright with information regarding the identities

of reviewers and fiduciaries.  Similarly, Defendants contend that Plaintiff was sufficiently

informed with respect to the review conducted by Nurse Pax.  In response to the discovery

requests pertaining to Mr. Filippone, Defendants assert that certain information requested by

Plaintiff is not in Defendants' possession, while other information is beyond the administrative

record and not discoverable.  Defendants contend that Plaintiff has not provided any legal basis

for her requests.

### 4.  Boilerplate Objections

Defendants' final argument concerns their objections to Plaintiff's discovery requests.

Defendants explain that Plaintiff's discovery requests sought information beyond the

administrative record, were not narrowly tailored and did not clearly specify what information Plaintiff was seeking. As such, Defendants contend that these objections are valid and should not be stricken from the record. Defendants suggest that Plaintiff could have amended the discovery requests to correct the deficiencies. Regardless, Defendants argue that Plaintiff has not provided sufficient persuasive authority in support of her argument that Defendants' boilerplate objections are inappropriate.

### C. Plaintiff's Reply

Plaintiff asserts that there is "uncontestable [sic] proof that Defendants withheld documents from the Administrative Record[.]" *Plaintiff's Reply Brief*, Docket Entry No. 21, *3. Plaintiff again asserts that Defendants unilaterally determined the contents of the administrative record and Plaintiff argues that, in doing so, Defendants deprived her of the full and fair review of her claim that she is entitled to under ERISA. Plaintiff contends that both parties are entitled to develop the administrative record and she argues that, despite her efforts, Defendants did not allow this to happen. Plaintiff believes that she has established a minimal showing of bias or irregularity, and she asks that the Court grant "the limited circumscribed discovery she seeks[.]" *Id.*

Plaintiff contends that Defendants are incorrect in their assertion that discovery beyond the administrative record is categorically prohibited in ERISA cases and Plaintiff cites a number of cases in support of this assertion. *Kosiba v. Merck & Co.*, 384 F.3d 58, 67, n.5 (3d Cir. 2004); *see also O'Malley v. Sun Life Assurance Co. of America*, 2006 WL 182099, at *7 (D.N.J. Jan. 23, 2006). Plaintiff argues that only a "minimal showing of bias or irregularity" is necessary to

allow discovery beyond the administrative record and Plaintiff relies on *Dandridge v. Raytheon Co.*, 2010 WL 376598, *6 (D.N.J.,2010).

Plaintiff again argues that discovery is necessary in order to complete the administrative record. *Plaintiff's Reply* at *5-6. Throughout her Reply Brief, Plaintiff contends that she sought information from Defendants in order to supplement the administrative record, but was unfairly denied the opportunity to do so. Plaintiff relies on the wording of the ERISA statute in support of her contention that the administrative record is incomplete because it does not include all documents requested by Plaintiff. 29 C.F.R. § 2560.503-1(h)(1).

Plaintiff also asserts that Defendants concealed the identities and credentials of medical reviewers CAFS and Nurse Pax and Plaintiff discusses the responsibilities of a fiduciary under ERISA. Plaintiff argues that she is entitled to discovery into the propriety of the fiduciary's decision and she cites a number of cases from other jurisdictions in support of this proposition. *Plaintiff's Brief* at *9; *Miller v. United Welfare Fund*, 72 F.3d 1066, 1073 (2d Cir. 1995); *Nagele v. Electronic Data Systems Corp.*, 193 F.R.D. 94, 103 (W.D.N.Y. 2000).

## II. Analysis

### A. Standard of Review

In cases governed by the Employment Retirement Income Security Act ("ERISA") where the plan affords the administrator discretionary authority, the administrator's interpretation of the plan "will not be dismissed if reasonable." *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 437 (3d. Cir. 1997) (*quoting Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989). In

other words, when a plan administrator has discretion to determine a claimant's eligibility for benefits, the plan administrator's decision is subject to review under an arbitrary and capricious standard. *Doroshow v. Hartford Life and Acc. Ins. Co.*, 574 F.3d 230, 233 (3d Cir. 2009).  Under the arbitrary and capricious standard, the claim determination will be upheld if it is supported by substantial evidence. *Doroshow*, 574 F.3d at 234 ("Under a traditional arbitrary and capricious review, a court can overturn the decision of the plan administrator only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law").

Typically in ERISA cases in which the arbitrary and capricious standard of review is used, the Court limits its review of the plan administrator's denial of benefits to only that evidence that was before the administrator when he or she made the decision being reviewed. *See Mitchell,* 113 F.3d at 440 (finding that under an arbitrary and capricious standard of review, the court looks to record as a whole, and that "whole" record consists of evidence that was before administrator when the decision being reviewed was made); *see also Johnson v. UMWA Heath and Ret. Funds*, 125 Fed. Appx. 400, 405 (3d Cir. 2005) (finding that "record for arbitrary and capricious review of ERISA benefits denial is record made before the plan administrator which cannot be supplemented during litigation").  However, the Court notes that "when a reviewing court is deciding whether to employ the arbitrary and capricious standard or a more heightened standard of review, it may consider evidence of potential biases and conflicts of interest that are not found in the administrator's record." *Johnson*, 125 Fed. Appx. at 405-06.  The type of evidence considered by courts focuses on whether a heightened standard of review is required either because there is a question regarding whether a structural conflict of interest exists (i.e. is

the entity making benefits determinations also financially interested in those determinations) or because the administrative record is overwrought with procedural anomalies. *See, generally, Kosiba v. Merck & Co.*, 384 F.3d 58, 64-67 (3d Cir. 2004); *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 393-95 (3d Cir. 2000).  Therefore, discovery will typically not be permitted beyond the administrative record in ERISA cases unless some extrinsic factor exists, such as a structural conflict of interest or significant procedural anomalies.

### B.  Structural Conflict of Interest - Standard of Review

The Supreme Court in *Glenn* altered the way in which a conflict of interest is handled by the courts. *Metropolitan Life Ins. Co. v. Glenn*, 128 S.Ct. 2343, 2348 (2008).  Previously, a finding of a conflict of interest resulted in the heightening of the arbitrary and capricious standard along a sliding scale, taking into account several factors including, the "sophistication of the parties, the information accessible to the parties, the exact financial arrangement between the insurer and the company; and the status of the fiduciary, as the company's financial or structural deterioration might negatively impact the presumed desire to maintain employee satisfaction." *Stratton v. E.I. Dupont de Nemours & Co.*, 363 F.3d 250, 254 (3d Cir. 2004) (internal quotations omitted). *Glenn* rejected heightening the arbitrary and capricious standard.  In *Glenn*, the Supreme Court reasoned that *Firestone* held that the word "factor" implies that courts should review the propriety of benefit denials, by taking into account many factors, including a conflict of interest. *Glenn*, 128 S.Ct. at 2351 (discussing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).  Effectively, the Court reaffirmed *Firestone* to the extent that deference should be given to "the lion's share of ERISA claims." *Id.* at 2350.  The Court opined that the conflict of

16

interest may be more important in circumstances "suggesting a higher likelihood that it affected the benefits decision," and would prove less important "when the administrator has taken active steps to reduce potential bias." *Id.* at 2351. Potential bias could be reduced "by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decision making irrespective of whom the inaccuracy benefits." *Id.*  In any event, the governing standard requires Plaintiff to show that the denial of benefits was arbitrary and capricious, with a conflict of interest as simply one factor for the court's consideration. *Estate of Schwing v. The Lilly Health Plan*, 562 F.3d 522, 525 (3d. Cir. 2009); *see also Howley v. Mellon Financial Corp.*, Civil Action No. 08-1748, 2010 WL 3397456, at *4 (3d Cir. Aug. 31, 2010)

A conflict of interest can be created, for example, when an employer both funds and evaluates employee claims. *Glenn*, 128 S.Ct. at 2348.  A conflict of interest can also be created if an employer pays an independent insurance company to both evaluate claims and pay plan benefits. *Id.* at 2349; *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 383 (3d Cir. 2000). However, a conflict of interest is not present if an employer funds a benefits plan, but an independent third party is paid to administer the plan.  *Pinto*, 214 F.3d at 383. Additionally, if an employer establishes a plan and creates an internal benefits committee vested with the discretion to interpret the plan and administer benefits, a conflict of interest does not exist. *Id.*; *see also Post v. Hartford Ins. Co.*, 501 F.3d 154, 164 n. 6 (3d Cir. 2007).

### 1. Application - Structural Conflict of Interest

In this case, the plan is funded by employee contributions, which greatly reduces potential

bias.  Additional potential for structural conflict of interest is further mitigated when, as here, the employer hires a third-party to administer the plan. *Pinto*, 214 F.3d at 383. This is especially true when, as here, the employer also creates an internal committee with discretion to interpret the plan and administer benefits. *Id.*; *see also Post*, 501 F.3d at 164 n. 6.  Plaintiff's suggestion that a conflict is created merely because the Plan is administered by the same Committee that administers other employee benefits which are funded by J&J and because the third-party administrator is being paid by Defendants is plainly contrary to cases where a structural conflict of interest has been found. *See, e.g., Zurawel v. Long Term Disability Income Plan for Choices Eligible Employees of Johnson & Johnson,* Civil Action No. 07-5973, 2010 WL 3862543 (D.N.J. Sept. 27, 2010)*; see also, e.g., Dunn v. Reed Group*, Civil Action No. 08-1632, 2009 WL 2848662 at *9 (D.N.J. Sep. 2, 2009) In both *Zurawel* and *Dunn*, this Court held that the very same LTD Plan arrangement at issue in this case did not present a conflict of interest. As such, the Court finds that in this instance there is no structural conflict of interest which could open the door to discovery beyond the administrative record.

In addition, Plaintiff's reliance on *Miller* is misplaced. *Miller v. American Airlines, Inc.,* 632 F.3d 837 (3d Cir. 2011).  First, the plan at issue in *Miller* is factually distinguishable from the Plan in case at hand.  Plaintiff contends that the Court's ruling in *Miller* served to clarify the Supreme Court's holding in *Glenn* and Plaintiff asserts that the holding in *Miller* allows for a finding of a conflict of interest may exist through a system of "indirect losses[.]" *Plaintiff's Brief in Support of Motion*, Docket Entry No. 11-1, *33.  However, the court in *Miller* analyzed a benefit plan in which "an *employer* makes fixed contributions to a plan, evaluates claims, and

18

pays claims through a trust." *Miller*, 632 F.3d at 847(emphasis added).  In this case, there is no dispute that the Plan is funded solely through participant contributions and is administered by a third-party administrator.

Further, the Court notes that discovery beyond the administrative record would be unnecessary even if the Court determined that the alleged conflict of interest existed because conflict of interest should be considered only as "a factor in determining whether Defendants abused its discretion in denying Plaintiff's benefits." *Glenn*, 128 S.Ct. at 2346; *see also Magera v. The Lincoln National Life Insurance Company*, 2009 WL 260993 at *6 (M.D. Pa. Feb. 4, 2009).  Therefore, since the Court can determine whether a conflict of interest exists based on documents in the administrative record, and since a finding of conflict of interest would not alter the rule that the entire record consists of the evidence in front of the administrator when making the decision under review, the Court denies Plaintiff's motion to compel discovery beyond the administrative record. *See Zurawel*, 2010 WL 3862543.

### C.  Procedural Irregularities

With respect to the existence of procedural abnormalities in an ERISA case, Plaintiff again misapplies the law.  As with the existence of a conflict of interest, the existence of procedural abnormalities could open the door to discovery beyond the administrative record and a court may "consider evidence of potential biases and conflicts of interest that is not found in the administrator's record." *Howley v. Mellon Financial Corp.*, 625 F.3d 788, 793-94 (C.A.3 N.J. 2010)(*quoting Kosiba v. Merck & Co.*, 384 F.3d 58, 67 n. 5 (3d Cir.2004); *see also Burke v. Pitney Bowes Inc. Long-Term Disability Plan*, 544 F.3d 1016, 1028 (9th Cir.2008) ("[T]he

district court may consider evidence outside the administrative record to decide the nature, extent, and effect on the decision-making process of any conflict of interest.") (internal quotation marks omitted).  However, given the Supreme Court's holding in *Glenn*, evidence of procedural abnormalities, or some other bias, is to be considered as a factor in determining whether an administrator's denial of benefits was arbitrary and capricious in the same way that the existence of a conflict of interest is to be considered as a factor.  Plaintiff has not presented any case law, and the Court has not found any, which suggests that the existence of procedural abnormalities is an automatic trigger to permitting discovery beyond the administrative record.

Further, procedural abnormalities are determined by a review of the administrative record. *See Zurawel*, 2010 WL 3862543.  As Defendant points out, many of the cases relied on by Plaintiff predate the Supreme Court's decision in *Glenn*.  Assuming that aspects of the pre-*Glenn* cases which permit discovery to prove the existence of bias, conflict of interest or inconsistent decision-making survive, courts in this District have ruled that discovery should be allowed when a plaintiff presents a good faith basis for alleging some bias or that a conflict infected the administrator's determination.  *Delso v. Trustee of Retirement Plan for Hourly Employees of Merck, Inc.*, 2006 WL 3000199 at *3 (D.N.J. Oct. 20, 2006).  The court in *Delso* further stated that "[i]f a plaintiff establishes a reasonable suspicion of misconduct, then courts should allow discovery requests reasonably likely to either confirm or disconfirm the presence of bias."  *Id.*  In this case, however, Plaintiff has not established a good faith basis for alleging bias, conflict of interest, or irregularity in the Defendant's decision-making process.  There is nothing in the administrative record, or in Plaintiff's brief, which raises a "reasonable suspicion of

[Defendant's] misconduct." *Id.*

In addition, even when the Court applies the more liberal standard used by the court in the *Dandridge* case cited by Plaintiff, Plaintiff still has not met her burden.[2]  Plaintiff's examples of procedural irregularities consist of broad allegations for which Plaintiff does not provide a factual basis.  For example, Plaintiff asserts that the final denial letter signed by Mr. McDonald was "ghostwritten by an anonymous person(s)[.]" *Plaintiff's Brief*, Docket Entry No. 15-1, *14. Plaintiff suggests that this shows that Defendants withheld the identities of reviewers and fiduciaries.  However, Defendants certify that they have provided this information to Plaintiff and there is nothing before the Court to suggest that there are additional decision-makers whose identities remain unknown.  As Defendants point out, the LTD Plan permits the Pension Committee to delegate its duties; however, it was Mr. McDonald who ultimately possessed the authority to approve or deny the claim benefit. *Defendant's Brief in Opposition*, Docket Entry No. 19 at *10.  There is nothing to suggest that Mr. McDonald's decision was not his own. Rather, the record suggests that his decision was an informed one, based on a review conducted by a third-party who was hired for the explicit purpose of providing an accurate and neutral

---

[2]While *Dandridge* suggests that discovery is permitted upon a minimal showing of bias or irregularity that could have impacted the administration of the claim, *Dandridge* is a not precedential opinion, and thus, without further guidance from the Third Circuit, this Court cannot conclude that full-scale discovery is permitted based upon a showing of bias or irregularity in every case because such a position would appear to conflict with pre-existing Third Circuit authority. *See, e.g., In re Merck & Co. ., Inc., Sec. Litig.*, 432 F.3d 261, 274 (3d Cir.2005) (noting "precedential cases cannot be overruled unless by the Circuit en banc."); cf. *Wallace v. Abel*, 318 Fed. Appx. 96, 98 n. 4 (3d Cir.2009) ("The court by tradition does not cite to its not precedential opinions as authority. Such opinions are not regarded as precedents that bind the court because they do not circulate to the full court before filing.") (quotation omitted).

analysis of Plaintiff's claim.

Similarly, Plaintiff's allegations regarding Nurse Pax and Mr. Filippone are unfounded. Defendants have identified Nurse Pax and Plaintiff has failed to offer any evidence to support her assertion that Nurse Pax's review was "cloaked in secrecy."  Also, Plaintiff's allegation that J&J unjustifiably relied Mr. Filippone's opinion is unsupported by the record.  Mr. Filippone further elaborated upon his evaluation during the FCE, specifically, with respect to the length of the video of the FCE, in his November 1, 2010 Letter to J&J; a copy of which Plaintiff attaches to her moving brief as *Exhibit I* [Docket Entry No. 15-11].  Further, Mr. Filippone's opinion was reinforced and deemed reliable by Dr. Trangle during the second level appeal analysis.[3]

Finally, Plaintiff asserts that the administrative record is incomplete.  However, Plaintiff does not provide specific explanations as to why each of the item she seeks should be part of the administrative record.  For example, Plaintiff cites to a letter she wrote to Dr. Laikin dated July 23, 2010 [Docket Entry No. 21-2] in which she requests specific information.  Defendants responded via letter dated September 1, 2010 [Docket Entry No. 21-3] indicating that the information sought from Dr. Laikin was beyond Defendants' control and beyond the administrative record.  Plaintiff did not offer then, and does not offer now, any specific reason as to why the information she seeks relating to Dr. Laikin's "background, or earnings" had any bearing on Plaintiff's LTD benefit or why this information should be part of the administrative

---

[3]Plaintiff claims that Mr. Filippone's evaluation of Plaintiff was based, in part, on his "Google Maps" research and Plaintiff refers the Court to *Exhibit I* to her motion. *Plaintiff's Brief in Support of Motion*, Docket Entry No. 15-1 at *7.  However, the Court's review of *Exhibit I* [Docket Entry No. 15-11] does not reveal any reference to "Google Maps."  It is unclear where/when Mr. Filippone makes this alleged reference.

22

record. *See Plaintiff's Reply*, Docket Entry No. 21 at *6.

Further, Plaintiff asserts that the September 1, 2010 response letter from Reed Group, itself, should be part of the administrative record; yet Plaintiff provides no basis for this assertion. *Id.* It is unclear to the Court how this letter was relied upon, submitted, considered or generated in the course of making the benefit determination pursuant to 29 C.F.R. §2560.503-1(m)(8). Plaintiff does not offer any explanation. The Court notes that to allow counsel for a plaintiff to supplement the administrative record with a document, despite the fact that it was not submitted, considered or generated in the course of making a claim determination, would grant a plaintiff the unilateral authority to construct the administrative record and would thwart ERISA's purpose of full and fair review of claims by clogging the administrative record with irrelevant information.

ERISA regulations specifically mandate what information must be included in the administrative record. 29 C.F.R. § 2560.503-1. As described above, Defendants certify that they have complied with those requirements. *Defendant's Brief in Opposition*, Docket Entry No. 19 at *14. In addition, Defendants assert that "[t]he process by which the administrators reached their decision to deny [Plaintiff]'s claim for LTD benefits is fully evident from the face of the administrative record." *Defendant's Brief in Opposition*, Docket Entry No. 19 at *10. While Plaintiff contends that Defendants unilaterally selected what information would be included in the administrative record and what information would be excluded, Plaintiff has failed to provide any basis for this Court to find that the excluded  information was submitted, considered, or generated when the claim determination was made.  *See* 29 C.F.R. § 2560.503-1(m)(8)(ii).

Because this Court finds that the administrative record is complete and contains all information submitted, considered or generated in the course of making the claim determination, Defendants have no obligation under ERISA regulations, or Third Circuit law, to provide the additional information Plaintiff seeks.

### C. Boilerplate Objections

The Court has reviewed Plaintiff's Notice to Produce and Interrogatories and Defendants' responses to same.  The Court finds that, although some of Defendants' responses contain boilerplate language, Plaintiff's discovery requests are improperly vague and expansive and Defendants have objected appropriately.  As evidenced by Defendants' discovery responses and by their Brief in Opposition to Plaintiff's motion, Defendants certify that they have provided Plaintiff with the complete administrative record.  They further certify that they have fulfilled their obligations under ERISA.  Indeed, much of the information Plaintiff seeks, as discussed above, is beyond the administrative record and Plaintiff has not provided justification as to why the items she seeks should have been included in the administrative. Further, many of Plaintiff's discovery requests seek documentation which is not in Defendants' possession.  As such, Defendants have no obligation, and no ability, to provide Plaintiff with same.


### III. Conclusion

For the reasons set forth above; and for good cause shown;

IT IS on this 11th day of June, 2012,

ORDERED that Plaintiff's Motion to Compel Discovery is DENIED;

24

and it is further ORDERED that the Clerk of the Court terminate the aforementioned

motion [Docket Entry No. 15] accordingly..


     s/ Tonianne J. Bongiovanni
**TONIANNE J. BONGIOVANNI**
**United States Magistrate Judge**