<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARYN MUCCINO, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 11-3641 (MAS) |
| LONG TERM DISABILITY INCOME PLAN FOR CHOICES ELIGIBLE EMPLOYEES OF JOHNSON & JOHNSON, et al., | : **MEMORANDUM OPINION** |
| Defendants. | : |

<u>**SHIPP, District Judge**</u>

This matter comes before the Court upon separate Motions for Summary Judgment filed by the Parties. Defendant Long Term Disability Income Plan for Choices Eligible Employees of Johnson & Johnson (along with its associated entities) (collectively, "Defendants") filed their Motion for Summary Judgment on September 10, 2012. (ECF No. 25.) Plaintiff Caryn Muccino ("Plaintiff") filed her Motion for Summary Judgment on that same date as well. (ECF No. 26.) Each party filed an Opposition and Reply. (ECF Nos. 32-35.) The Court has carefully considered the Parties' submissions and decided the matter without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78. For the reasons stated below, and for other good cause shown, both Plaintiff's and Defendants' Motions for Summary Judgment are DENIED without prejudice and this matter is REMANDED for further administrative proceedings.

RECEIVED

APR 12 2013

AT 8:30_____M
WILLIAM T. WALSH CLERK

I.  **Background**

Plaintiff was hired by Johnson & Johnson as a "Senior Regulatory Affairs Associate" in 1989 and worked in that capacity until 1999, at which point she became disabled.[1] Prior to becoming disabled, Plaintiff opted to become eligible for both short term and long term disability (LTD) benefits offered to her through her employment with Johnson & Johnson. The LTD benefits were offered through the Long Term Disability Income Plan for Choices Eligible Employees of Johnson & Johnson (the "Plan"). A Plan participant is only qualified to receive LTD benefits if her disability prevents her from performing "any job for which the participant is (or may reasonably become) with or without reasonable accommodation qualified by training, education or experience."[2]

Initially, Plaintiff's disability resulted from "Major Depressive Disorder, Panic Disorder and Migraines." Her final day of work was August 15, 1999. After a period during which she qualified for and received short term disability, Plaintiff attempted to return to work. Those efforts failed. She was approved for LTD on February 14, 2000, and Social Security Disability Benefits on September 29, 2000. Plaintiff continues to receive Social Security Disability Benefits to the present day.

From the point that Plaintiff initially became disabled until 2006, the Plan was administered by Kemper Insurance Corporation and/or Broadspire Services, Inc. Plaintiff received LTD benefits without interruption throughout the period that Kemper and/or Broadspire administered the Plan. Beginning April 1, 2006, Reed Group ("Reed") became the administrator

---

[1] The following facts are drawn from Plaintiff's Statement of Undisputed Material Facts, ECF No. 26-2, unless otherwise noted.

[2] While on short term disability benefits, as well as during the first year of receiving LTD benefits, whether a plan participant is disabled is determined by consideration of the ability of the participant to return to her previous occupation rather than whether she is able to perform any occupation.

of the Plan. No change to Plaintiff's benefits or challenge to Plaintiff's disability was initially raised by Reed. Various reviews of Plaintiff's file throughout 2006-07 by medical consultants retained by Reed indicated that Plaintiff continued to be disabled and was unfit to work in any capacity.

In 2008, Reed retained psychiatrist Michael Laikin, M.D. ("Laikin"), to perform an Independent Medical Examination ("IME") of Plaintiff. After various communications between Laikin and Reed resulting from inconsistencies in Laikin's initial IME report, Laikin opined that Plaintiff suffered from Borderline Personality Disorder and should undergo Dialectical Behavioral Therapy ("DBT"). Based on those recommendations, Reed required Plaintiff to enter DBT or have her benefits terminated. Plaintiff complied and began treatment with Lucille Bar-David, LCSW ("Bar-David"). Bar-David subsequently diagnosed Plaintiff with Major Depression and Post Traumatic Stress Disorder ("PTSD").

In or about September 2008, Plaintiff sought treatment at Somerset Medical Center "complaining of difficulty speaking and left facial numbness." She was diagnosed as having suffered from a transient ischemic attack. Plaintiff contends that she has continued to experience "weakness, falling and numbness in her extremities."

Bar-David, throughout 2008 and 2009, submitted Mental Health Evaluations ("MHE") to Reed which described Plaintiff as suffering from "Recurrent, Severe and Chronic Major Depression," as well as PTSD. Bar-David listed Plaintiff's symptoms as including "difficulties finding words; memory loss; disorientation; anxiousness, and depressed behavior; speech being rapid/pressured and monotone at times; distractibilty; and difficulty concentrating." Those symptoms affected Plaintiff's functional abilities, including: difficulty "following directions; decision making; time management; sociability; and regular occupational and daily living

3

activities." Bar-David viewed these symptoms, and their effects, as preventing Plaintiff from working.

In early 2009, Reed terminated Plaintiff's LTD benefits due to a failure to attend the required DBT program sufficiently. This was reversed upon appeal; Plaintiff was discovered to have attended the required sessions. Moreover, during the appeal process, an additional psychiatrist reviewed Bar-David's file related to Plaintiff and determined that Plaintiff continued to be disabled. Reed came to the same conclusion as well.

In May 2009, Plaintiff came under the care of rheumatologist Marc Storch, M.D. ("Storch"), complaining of "various constitutional symptoms" and Storch made a preliminary diagnosis of "lupus or Sjogren's syndrome."[3] In September 2009, Ryan White, PA-C ("White"), noted that Plaintiff suffered from systemic lupus erythematosis and migrane headaches. He further noted that Plaintiff was "able to engage in only limited stress situations and engage in only limited interpersonal relations" and was unable to perform any job. During this same time period, Bar-David's MHEs submitted to Reed indicated that Plaintiff suffered from emotional issues which prevented her from working.

In approximately November 2009, Reed retained psychiatrist Dean Knudson, M.D. ("Knudson"), to conduct a peer review of Plaintiff's file. Knudson concluded that Plaintiff did not suffer from "prominent long-term vegetative depressive symptoms" and was no longer functionally impaired. Based on those findings, Reed referred Plaintiff to Laikin for a second IME.

---

[3] The existence of these rheumatological and auto-immune conditions within Plaintiff, and/or their current state and effect on Plaintiff, are disputed by Defendants. For purposes of this narrative, however, their *diagnoses* by Plaintiff's doctors, rather than the ultimate merits of their existence and impact on Plaintiff, are acknowledged by the Court.

Laikin's second IME was conducted in December 2009 and concluded that Plaintiff had "no psychological disorder supported by objective findings." He noted that Plaintiff was a productive mother and her work in her home was the equivalent of a full time job. Although Plaintiff was under stress, Laikin opined that she was "coping well" and recommended that she continue psychotherapy twice a week. Contemporaneous to Laikin's second IME, Muccino's primary medical care providers continued to certify her disability to Reed.

Reed had Plaintiff undergo a Functional Capacity Evaluation ("FCE") in January 2010 under the supervision of Charles Filippone ("Filippone") of Biokenetics. Reed instructed Filippone to "perform the [FCE] to the minimum level necessary to qualify for sedentary work. Do not task [Plaintiff] beyond the minimum level of effort necessary to qualify her for a sedentary eight hour a day occupation." The FCE included various physical tests and protocols with a focus on balance, gait, posture and strength.[4] Filippone concluded that Plaintiff met "the essential postural and physical demands for sedentary work as defined by the Dictionary of Occupational Titles . . . for an [eight (8)] hour work day."[5]

Another IME was conducted on Plaintiff by rheumatologist Rajat Dhar, M.D. ("Dhar"), on March 4, 2010. Dhar reviewed Plaintiff's medical records for approximately one hour and examined Plaintiff for approximately forty-five (45) minutes. Dhar diagnosed Plaintiff with fibromyalgia and probable Sjogren's syndrome, recommended an increased dose of medication to treat Plaintiff's rheumatological symptoms and concluded that Plaintiff could work an eight (8) hour per day job.

---

[4] Plaintiff was required to walk twenty-five (25) feet ten times as part of a gait trial; complete a sixty (60) second "eyes-open balance test;" a sixty (60) second "eyes-closed balance test; two leg balance tests lasting five [5] seconds each;" two (2) "postural evaluations requiring Plaintiff to lift a one-pound plastic weight;" and five (5) "strength tasks lasting" five (5) seconds each.

[5] According to Plaintiff, and unbeknownst to Filippone, Plaintiff had taken a medication named Dilaudid prior to performing the FCE. The impact of this fact is disputed by the Parties.

Reed notified Plaintiff that it was terminating Plaintiff's benefits on March 12, 2010. Reed relied upon the reports of Knudson, Laikin, Filippone and Dhar. Plaintiff appealed. Throughout the appeal process Plaintiff's primary medical care providers continued to submit information to Reed consistent with their previous opinions regarding Plaintiff's condition and disability.

While the appeal was pending, another peer review of Plaintiff's file was conducted, this time by psychiatrist Stuart Gitlow, M.D. ("Gitlow"). Gitlow, consistent with Knudson and Laikin, found that Plaintiff did not have a psychiatric condition that would prevent her from working. An additional review of Plaintiff's physical health was conducted by internal medicine physician Gary Nudell, M.D. ("Nudell"). Nudell disagreed with Storch's diagnoses of lupus or Sjogren's syndrome and found that Plaintiff did not suffer from any physical health issues which would wholly prevent her from returning to work. Plaintiff's appeal was denied on May 4, 2010, based upon Nudell and Gitlow's reviews.

A second appeal followed. Before the second appeal was filed, however, Plaintiff's attorney requested and received information from Filippone regarding the FCE. Plaintiff states that the FCE was deficient for several reasons and procured an expert who stated the same. Defendants disagree.

As part of Plaintiff's second appeal, Medical Questionnaires for Disability Assessments were submitted by various doctors and professionals on behalf of Plaintiff. Those professsionals included physical therapists and a doctor who treated Plaintiff for her migraines, in addition to Storch and Bar-David. Reed, for their part, sent Plaintiff's file for a peer review by psychiatrist Kelly Clark, M.D. ("Clark"), who found that Plaintiff did not exhibit any "objective signs of cognitive impairment" which prevented her from working. Reed also sent Plaintiff's file for a

peer review by occupational medicine physician Kevin Trangle, M.D. ("Trangle"). Trangle concluded that Reed's various experts were correct regarding their assessment of Plaintiff, that Storch's diagnoses of Lupus was not supported by objective evidence and that Filippone was correct when he concluded that Plaintiff was able to return to work in a sedentary job.

Reed denied Plaintiff's second appeal relying upon the reports submitted by Filippone, Dhar, Nudell, Gitlow, Clark and Trangle on December 9, 2010. Reed found that there was "substantial evidence" to support the conclusion that Plaintiff was able to perform in a full-time sedentary work environment. Plaintiff filed her Complaint on June 23, 2011.

## II.   Legal Standard and Analysis

### A.   Standard for Summary Judgment

Summary judgment is appropriate if the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A district court considers the facts drawn from the "materials in the record, including depositions, documents, electronically stored information, affidavits . . . or other materials" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c)(1)(A); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). More precisely, summary judgment should be granted if the evidence available would not support a verdict in favor of the non-moving party. *Id.* at 248-49. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48.

### B. Standard of Review

A denial of ERISA benefits is reviewed under the arbitrary and capricious standard. *Brandeburg v. Corning Inc. Pension Plan for Hourly Emps.*, 243 F. App'x 671, 672-73 (3d Cir. 2007); *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 437 (3d Cir. 1997). The Court exercises only limited review of a plan's decision under the arbitrary and capricious standard. Under the arbitrary and capricious (or abuse of discretion) standard of review, the district court may overturn a decision of a plan administrator only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law. *Mitchell*, 113 F.3d at 437. The Court is not free to substitute its own judgment for that of the administrator's in determining eligibility for plan benefits. *Fahringer v. Paul Revere Ins. Co.*, 317 F. Supp. 2d 504, 510 (D.N.J. 2003) (citations omitted). Both Parties recognize that the arbitrary and capricious standard controls the Court's analysis. (Pl.'s Br. 10, ECF No. 26-1; Defs.' Opp'n Br. 5, ECF No. 32.)

### C. Remand is Required

The record currently before the Court does not allow it to determine whether Reed's decision to terminate Plaintiff's LTD benefits was arbitrary and capricious. As noted by Judge Wolfson, although "a vocational analysis is not a requirement of a claim determination . . . Defendant is still obligated under ERISA to provide a well-reasoned explanation of its decision including which sedentary jobs Plaintiff is capable of working, with or without accommodations." *Dunn v. Reed Grp., Inc.*, No. 08-1632 (FLW), 2009 WL 2848662, at *12 (D.N.J. Sept. 2, 2009) (citing *Havens v. Cont'l Cas., Co.*, 186 F. App'x. 207, 212-13 (3d Cir. 2006)).

Without a vocational analysis the Court is unable to determine which jobs, if any, Plaintiff's current physical and psychological abilities are an appropriate match. *See Havens*, 186 F. App'x at 212 ("The irreducible logical core of [finding that a claimant is not disabled according to the Plan is a determination that the] claimant has a residual functional capacity that equals or exceeds the functional requirements of a feasible alternate occupation. These two determinations-the claimant's capacity and the occupation's requirements-must together be detailed enough to make rational comparison possible."). Lacking such a comparative vocational analysis, the Court is unable to determine if Reed's finding that Plaintiff was no longer disabled was arbitrary or capricious. As such, this matter is REMANDED for further administrative proceedings, including a vocational analysis. Both Plaintiff's and Defendants' Motions for Summary Judgment are DENIED without prejudice. Rather than stay this case, the Clerk of the Court will be instructed to close this case. If Reed finds that Plaintiff's benefits should not be reinstated following further administrative proceedings, Plaintiff is instructed to submit correspondence requesting that the Court reopen this case.

*/s/ Michael A. Shipp*
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: April 12, 2013